J-A14026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHAWNA A. RESSLER, NOW SHAWNA A. RIOPELLE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| TRAVIS L. EPPLEY | : | |
| | : | |
| Appellee | : | No. 131 WDA 2021 |

Appeal from the Order Entered December 23, 2020
In the Court of Common Pleas of Cambria County
Civil Division at No(s): 2014-299

BEFORE: MURRAY, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.: **FILED: July 2, 2021**

Appellant, Shawna A. Ressler, now Shawna A. Riopelle ("Mother"), appeals from the order entered in the Cambria County Court of Common Pleas, denying her request to relocate with the parties' minor child, L.A.E. ("Child"). We affirm.

The relevant facts and procedural history of this appeal are as follows. Mother and Appellee, Travis L. Eppley ("Father"), dated for approximately three years, and Child was born in 2011. The parties separated in 2013. By custody order entered July 31, 2019, the parties have shared legal custody of Child. Mother has primary physical custody, subject to Father's periods of partial custody every other weekend. Father is also afforded additional custody periods "as the parties may mutually agree." (Order, entered 7/31/19, at 5).

Father lives in Cambria County and works as a forklift operator at a retail distribution center. Father has been in a relationship with his current partner for almost five years. Mother also lives in Cambria County. She worked as an engineering consultant, supporting the Pennsylvania National Guard, but her government contract terminated. In 2020, Mother married Justin Riopelle ("Stepfather"), who is a sergeant in the United States Army. Stepfather is currently stationed in Hawaii, but he is scheduled for relocation in 2022.

On April 27, 2020, Mother filed a notice of proposed relocation, seeking to move to Hawaii with Child. Father filed a counter-affidavit on May 4, 2020, objecting to relocation or modification of custody. On July 24, 2020, the court conducted a summary hearing via Zoom. By opinion and order entered July 30, 2020, the court denied Mother's request to relocate.

Mother subsequently requested a full evidentiary hearing, which the court conducted on November 6, 2020. As part of the hearing, the court interviewed Child outside the presence of counsel or the parties. On December 23, 2020, the court issued another order and opinion denying Mother's request to relocate. Mother timely filed a notice of appeal and concise statement of errors complained of on appeal on January 22, 2021.

Mother raises the following issues for our review:

> Did the trial court abuse its discretion and make an error of law in finding the Father's testimony credible pertaining to the integrity of Father's motives in opposing relocation?

> Was the trial court's decision to deny relocation against the sufficiency of the evidence?

Was the trial court's decision to deny relocation against the weight of the evidence such that the conclusion of the trial court was unreasonable in light of the evidence?

(Mother's Brief at 8).

In her three issues, Mother asserts that Father failed to provide a reason for his opposition to relocation when testifying at the November 6, 2020 hearing, and the court failed to address this omission in its subsequent order and opinion. Further, Mother emphasizes that Father provided inaccurate testimony on multiple occasions during the full evidentiary hearing. Mother insists that Father lied about his marital status, his influence on Child's religious beliefs, how often he sees Child, and what activities he participates in with Child. Although Mother acknowledges that the court is to be given latitude in making credibility determinations, she maintains it was unreasonable to credit Father's testimony under these circumstances.

Mother also claims that the court did not properly weigh all relevant evidence, including Father's inability to provide a reason for opposing relocation and his status as a convicted felon. Regarding Father's relationship with Child, Mother insists that Father does not spend as much time with Child as he claims, he rarely exercises his custodial rights, and he performs few parental duties. Additionally, in the event of relocation, Mother contends she will pay for all flights and make all arrangements for Child to visit Father. Mother argues that her willingness to cover all travel expenses for Child is a valid reason to approve relocation. Based upon the foregoing, Mother

- 3 -

concludes that the court's denial of her relocation petition is against the weight and sufficiency of the evidence. We disagree.

In reviewing a child custody order:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.J.S. v. M.J.S.*, 76 A.3d 541, 547-48 (Pa.Super. 2013) (internal citation omitted).

"The trial court must consider all ten relocation factors and all sixteen custody factors when making a decision on relocation that also involves a custody decision." *A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa.Super. 2013). With respect to a custody order, Section 5328(a) provides:

**§ 5328.  Factors to consider when awarding custody**

**(a)    Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1)    Which party is more likely to encourage and permit frequent and continuing

contact between the child and another party.

(2)　The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3)　The parental duties performed by each party on behalf of the child.

(4)　The need for stability and continuity in the child's education, family life and community life.

(5)　The availability of extended family.

(6)　The child's sibling relationships.

(7)　The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)　The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)　Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)　Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)　The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant custody factors, complies with Section 5323(d). **Id.**

The Custody Act defines "relocation" as "[a] change in residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a). Section 5337 sets forth the procedures and factors governing relocation in relevant part as follows:

**§ 5337. Relocation**

**(a)** **Applicability.**—This section applies to any proposed relocation.

**(b)** **General rule.**—No relocation shall occur unless:

(1) every individual who has custody rights to the child consents to the proposed relocation; or

(2) the court approves the proposed relocation.

\* \* \*

**(d)** **Objection to proposed relocation.**—

(1) A party entitled to receive notice may file with the court an objection to the proposed relocation and seek a temporary or permanent order to prevent the relocation. The nonrelocating party shall have the opportunity to indicate whether he objects to relocation or not and whether he objects to modification of the custody order or not. If the party objects to either relocation or modification of the custody order, a hearing shall be held as provided in subsection (g)(1). The objection shall be made by completing and returning to the court a counter-affidavit, which shall be verified subject to penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities), in substantially the following form….

\* \* \*

**(h)** **Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of

the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3)    The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4)    The child's preference, taking into consideration the age and maturity of the child.

(5)    Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6)    Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7)    Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8)    The reasons and motivation of each party for seeking or opposing the relocation.

(9)    The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10)   Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(a)–(b), (d)(1), (h).  Moreover,

[T]he party proposing relocation…bears the burden of proving relocation will serve the children's best interests. *See* 23 Pa.C.S.A. § 5337(i).  Each party, however, has the

burden of establishing "the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S.A. 5337(i)(2).

*S.J.S., supra* at 551. In all of these proceedings:

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> > The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (internal citations omitted).

Instantly, the court conducted the summary hearing and considered all custody and relocation factors, including Father's motive for opposing relocation. (*See* Trial Court Opinion, filed July 30, 2020, at 6-15; Trial Court Opinion, filed February 19, 2021, at 6-9). Significantly, the court determined that relocation would hinder Father's ability to preserve his relationship with Child:

> Notwithstanding the efforts of Mother and [Stepfather] to ensure Father's custodial time, it is clear that relocation to Hawaii with Child would indelibly change Child's relationship with Father. In all likelihood, the majority of Father's custody will take place in Pennsylvania. Because of the distance between Hawaii and Pennsylvania, Father probably will never be able to attend Child's parent-teacher conferences, school concerts, parent lunches, sporting events, or lessons. Although Mother offered week-long and

summer custody to Father, all of her proposed schedules necessitate large gaps of time between visits. Father cannot afford additional trips to Hawaii unless he plans financially for a year, uses significant vacation time, and forges his own family vacation. Father acknowledges that additional travel to Hawaii is not easy or realistic. Despite Mother's best efforts, it is not feasible to fully preserve Father's relationship with Child if Mother relocates to Hawaii. This factor does not favor Mother's proposed relocation, and it is the most significant basis for the [c]ourt's decision.

(Trial Court Opinion, filed July 30, 2020, at 8-9) (internal quotation marks omitted).[1]

The court later conducted a full evidentiary hearing. Following the hearing, the court addressed the new evidence presented for its consideration, which included Mother's testimony about inaccuracies in Father's testimony from the summary hearing. In its final order and opinion, the court acknowledged certain inconsistencies in Father's testimony. Nevertheless, such inconsistencies did not alter the outcome of the court's relocation analysis:

None of the additional evidence or testimony significantly changes [the c]ourt's analysis of the relocation and best interest factors. Father probably overstated his involvement in Child's church attendance, which has been halted by Father's reasonable reaction to the coronavirus. Father has a strong bond with Child regardless [of] whether they went fishing two times or two dozen times. It doesn't matter whether Father and [his paramour] are legally

---

[1] Regarding Father's opposition to relocation, the court later noted that "the record contains ample testimony—from Mother, Father, and Child—that demonstrates Father has genuine reasons for opposing Mother's request to relocate Child thousands of miles away." (Trial Court Opinion, filed February 19, 2021, at 7).

married or whether they engaged in a civil commitment ceremony. It is clear from Child's interview that she and Father share a strong bond and that Child enjoys participating in various activities with Father in what he lovingly refers to as their "privileged time."

[The c]ourt's conclusion is unchanged: It is not feasible to fully preserve Father's relationship with Child if Mother and Child relocate to Hawaii. This factor does not favor Mother's proposed relocation, and it continues to be the most significant factor in the [c]ourt's determination. To use Mother's own words, "You only get one Dad in life."

(Trial Court Opinion, filed December 23, 2020, at 8-9) (internal record citation omitted).

Despite the inconsistencies in Father's testimony, the record supports the court's determination that Father and Child share a strong bond. As the court properly considered the factors articulated in Sections 5328(a) and 5337(h), we see no reason to disturb the court's decision. **See S.J.S., supra**; **A.M.S., supra**. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/2/2021